TAYLOR v. THE DISTRICT TOWNSHIP OF WAYNE.

25  447
o117  327

1. Schools: CONTRACTS OF DISTRICT BOARD. The district board of a district township, conceded to have no power, unless authorized by a vote of the electors, to bind the district in the purchase of maps, charts, and other school apparatus.

2. —— RATIFICATION OF UNAUTHORIZED CONTRACT. The fact that such maps and apparatus were by the board distributed among the several subdistricts, and continued to be used thenceforward in the schools thereof, with the knowledge and acquiesence of the directors and electors, and the further fact that no steps were taken, at regular district meetings held by such electors after such purchase, to repudiate such contract and return the property, would not amount to a ratification of the contract. Nothing less than the action of the electors in their corporate capacity would amount to a ratification.

*Appeal from Monroe District Court.*

THURSDAY, JULY 23.

IN July, 1865, Andrews and Bigelow sold to the district board of defendant, certain "maps, and keys, charts, globes, and other school apparatus," for which an order was drawn by the president and secretary, on the treasurer, in favor of Andrews and Bigelow, "or bearer," for $221.20, payable April 1, 1867, with ten per cent interest. The order was payable out of the "contingent fund," and upon its face showed for what it was given. The maps, charts, etc., were furnished and distributed to the different schools of the district. This action was brought in August, 1867, by plaintiff, as the holder of the order or warrant, the petition setting forth the above facts.

On the trial, the jury found a general verdict in plaintiff's favor in the sum of $273; and also, specially: First, that the board had no power to purchase the maps. Second, that the purchase was not made pursuant to any vote of the people. Third, that the electors never had, by vote, ratified or acquiesced in such purchase. * * · * Fifth, that defendant took possession of and used the maps, etc., in the several schools of the district, and acquiesced in the purchase of the same.

Defendant moved for judgment in its favor on the special findings, and to set aside the general verdict and for a new trial. Both motions were overruled. Judgment followed the general verdict, to which defendant duly excepted and appeals.

*Stuart & Bro's* for the appellant.

*Perry & Townsend* for the appellee.

WRIGHT, J. — Plaintiffs conceded in the court below "that at the time of the purchase of these maps and issuing the order, the board had no authority to make the same," and the court without objection instructed the jury, that the board could not by any unauthorized act or contract create or fix a liability upon the district to pay for the same, nor could it, by its own action at any subsequent meeting, so ratify the unauthorized act as to render the district liable. But they were instructed, "that if they found that the maps, etc., were by the board distributed among the several sub-districts, and have since been used in the schools with the knowledge and acquiescence of the directors and electors of said district township, with full knowledge on the part of the directors and electors, and further find that the regular district meetings of said district township have been held by the electors of said district, and that no steps have been taken to repudiate such contract, and return such maps, etc., then said district should be deemed to have ratified the contract; and also as follows: "If you find from the evidence, that said district has received and used said maps, etc., and so acquiesced in such action of the board as to show a ratification on the principle of the above instruction, then you should find for plaintiff the amount due on the order."

*1. Schools: contracts of district board.*

Treating plaintiff as in no better position than the original payee (and this is the rule applicable to paper of this kind. See directly in point: *Shepherd* v. *District Township of Richland,* 22 Iowa, 595), the only question in the case is whether these instructions are law. If so, the judgment is right. If not, it is wrong, and must be reversed.

The question of power to make the contract is out of the case. It is conceded that it must be derived from the electors, and that it was not given. The record, we may

add, shows affirmatively that the electors in 1864 refused to raise a tax to purchase a library, and in 1865 declined to delegate any of their powers to the board.

Do these instructions then contain the law? We answer, no. The township district is a body corporate.

2. —— ratification of unauthorized contracts. Certain powers are reserved by or conferred upon the electors; others are given by law to the district board, and others again to subdirectors. The electors composing the corporate body act by and through specific agencies and in the mode provided by law. They cannot, as individuals, when not convened at the times and places contemplated by law, vote to raise a tax, authorize the making of a contract, delegate their powers, nor exercise any of the powers conferred upon them as electors by law. The law contemplates action by them in their aggregate capacity, when duly and properly assembled, and not the action of each elector by himself, on the streets, at his store or shop, in the church or school house. And the formal, so to speak, legislative action, by the electors, essential to bind the corporation in the making of a contract, is equally so in the ratification of one which there was no power to make.

Thus, to illustrate, the assent of a majority of the electors, when not convened, to the levy of a tax, would not authorize its levy. Neither would their subsequent assent in the same manner, ratify or make it valid. For if so, an act originally without validity, could by a like illegal or unauthorized act be made valid. In other words, two wrongs would make a right. And, as the *electors* could not thus be held as ratifying their own act, certainly they could not as to an act of the board, when there was a want of power. It is corporate acts which bind, and these alone, which, in a body of this kind, can be construed into a ratification. If the board could for the

Taylor v. District Township of Wayne.

purposes of this inquiry be regarded or treated as the agents of the corporation, then a mere irregularity on their part might be waived, and the use by the corporation of the property so obtained might possibly be construed to raise an implied promise to pay for the same. But very different is the case before us. The knowledge and acquiescence of the directors go for nothing. If they could not bind by their promise, surely they could not by their mere knowledge that the maps, etc., were in the school houses, or their acquiescence that they might remain there. As to the electors, repudiation was not necessary to avoid liability. Of course, the electors might adopt the act and order the payment of the demand. But, to hold meetings and take no steps to repudiate is not in law an adoption of such act. Neither the use of the maps in the schools, nor the failure to object when no affirmative action was invoked, would amount to a ratification. Incidental ratification of the acts of officers beyond the scope of their authority would be a most dangerous doctrine.

Ratification should be direct with a full knowledge of the facts, and as before suggested, should be a corporate act. As well might it be said that because no one of the citizens of a municipal organization objected to the use and enjoyment of property, purchased or obtained by the authorities, without authority, without power to make the contract or bind the corporation, therefore there was ratification and consequent corporate liability. It was as much the duty of the party selling, as the officers, to see that the law was complied with and followed. If in this they failed, if they chose to take the hazard — and we can only presume that they did so — they must be treated as mere volunteers, and left to suffer what they might reasonably have anticipated. The analogy drawn from

obligations of individuals to pay for the work accepted by them, does not touch the case.

We have found no case sustaining these instructions, nor can they be sustained on principle. The cases cited by appellee fall far short of the rule for which he contends.

Those cited by appellant, for the most part, fully accord with the views above expressed.

Reversed.