39, 490
131 543

## THE NATIONAL STATE BANK OF MT. PLEASANT v. THE IND. DIST. OF MARSHALL.

1. **School District:** LIMIT OF INDEBTEDNESS: CONSTITUTIONAL LAW. A school order, drawn upon the treasurer of an independent district which is already indebted in excess of the constitutional limitation, is invalid in the hands of the original holder and cannot be enforced.

2. ———: ORDER: NEGOTIABILITY. Such an order does not possess the characteristics of negotiable paper, although payable to bearer and negotiable in form, and, in the hands of an assignee, it is subject to any defense which might have been made against the original holder.

3. ———: ———: CURATIVE ACT. Chapter 49, Laws of the Fourteenth General Assembly, does not validate orders drawn upon the treasury of the district subsequent to the taking effect of the act.

4. ———: ASSIGNMENT: ORDER. Where a school order was issued in excess of the constitutional limitation, the assignment of the debt growing out of such order does not entitle the assignee to recover in an action to enforce the payment of the order.

*Appeal from Henry District Court.*

TUESDAY, OCTOBER 6.

ON the 28th of May, 1872, plaintiff filed a verified petition, claiming of the defendant the sum of $1,000, with interest

from May 20th, 1868, on account of a school house order of which the following is a copy:

"No. 29.　　　　　　　　MARSHALL, May 20, 1868.

The Treasurer of the Independent District of Marshall, County of Henry, and State of Iowa, will pay to John Williams or bearer, the sum of one thousand dollars, out of the school house fund in said township. The above is due one year from date, with ten per cent interest after date until paid.

$1,000.　　　　　　　　W. H. FRANK, President.

Countersigned by W. B. LAMBERSON, Secretary."

On July 10, 1872, plaintiff amended its petition by adding thereto as follows: "That said obligation is an order issued by said district, drawn on the treasurer thereof, and which was sold, and the proceeds used in building a school house therein, or in paying the indebtedness on this building, and the full actual benefit of which the district had received and appropriated to its own use, and now enjoys."

The defendant answered:

1. Denying that the obligation sued on is an order such as could under any circumstances be issued by said district, or by any person acting as its officer, and alleging that it is void.

2. Alleging that defendant is not sufficiently advised to either admit or deny; that the proceeds of said order were used in building a school house in said district.

3. Alleging that no authority was voted by the electors of said district to the board of directors thereof, authorizing them to build said school house, or to raise any funds, or levy any tax for the purpose of building the same. That the question of issuing any bonds or orders, or levying any tax for the purpose of building such school house, was never, by the board of directors of said independent district, submitted to the voters of said district as by law required.

That no notice of any meeting or election was given, nor was the question submitted to or voted upon by the electors of defendant, as by law required, and that none of the prerequisite steps were taken relative to the creation or the issuing of

any bonds or orders in the premises, and that the order was issued without authority, and is void.

4. That the order was issued together with other similar papers as evidence of some indebtedness, on account of the erection of a school house, or under the pretense of raising funds to apply to the building of a school house. That the indebtedness was greater than defendant is by law capable to contract, being greater than five per centum of the value of the property of said district, according to the last assessment prior to the issuing of said order, or the creation of said indebtedness.

5. That the order was issued for a much greater sum than the amount realized thereon by the district, and that the order is therefore usurious.

The cause was referred to Edwin Van Cise, to find and report the facts involved in the pleadings.

On the 8th of May, 1873, the referee reported the facts, of which the material portion is in substance as follows:

1. That the total amount of indebtedness of the Independent District of Marshall, at the time of issuing the order in suit in this case, and including said order, was $4,999, on account of a contract with one John Williams, to build a school house for said district. There would seem to have been outstanding evidences of indebtedness hereon, to-wit: orders exclusive of the order in suit, amounting only to $4,094.49.

Here follows an enumeration of orders, prior to May 20th, 1868, amounting to $4,094.49, all drawn in favor of John Williams, and on the school house fund, except one, amounting to $69.49, in favor of H. M. Pickel, on the contingent fund.

The order in suit is dated May 20th, 1868. These orders were all issued by authority of the board except one for $605.00. The record fails to show authority for this, but the treasurer's books show a payment upon it of $150.00.

2. The value of the taxable property of said district, as shown by the assessment made next previous to the issuing of the order in suit, was $50,278.

3. The records of the board show that an electors' meeting

was held March 11, 1867, and contain a minute declaring that "it was resolved that the necessities of the district render it necessary to vote a tax of $8,000 for school house purposes which was also unanimously approved through the ballot box." This meeting was held at the time required by law, and was regularly advertised by posted notices as, "A meeting to be held for the election of directors, and to transact such other business as would legally come before it." The notice did not specify that a vote would be taken on the question of building a school house, or levying a tax or issuing bonds thereof. Few, if any, persons were present beside the board of directors. There is no vote of the people authorizing the issuing of bonds or orders. After March 11, 1867, the board of directors reduced the price of the house to $4,999.

4. In October, 1867, the board authorized the issuing of $2000 bonds, with the addition of such sums as would be necessary to negotiate the same. An order was drawn for $2,420, payable one year after date, with ten per cent. interest from maturity, and sold for $2000. The orders were all discounted when sold by the treasurer at the rate of about 20 per cent.

5. The board, at a meeting held March 30, 1868, authorized the issuing of $2000 in orders of size to suit purchasers. In accordance with this resolution the order in suit for $1000 and two others, each of $500, were issued.

6. Plaintiff became the owner of the order in suit by purchasing the same of David Wooley, on January 10, 1870, paying therefor a secured note of Wooley to plaintiff, for $1000, and $25 in cash.

7. In July, 1870, Jackson Allen, treasurer of defendant, paid plaintiff on said order $83.00.

8. The money derived from the sale of this and the other orders, was used in the erection of a school house by defendant, and defendant has occupied and used, and still occupies and uses, said house.

9. The district has property as an off-set to said indebtedness, amounting to $100.00.

10. It does not appear that plaintiff had knowledge of the

rate at which the orders were negotiated, or that any defense would be set up against their payment.   Some other facts were found, which are not pertinent to the questions presented.

The cause, after argument of counsel, was submitted to the court on the 13th of March, 1873, on the report of the referee, and the court proceeded to announce the law of the case, and stated that, under the pleadings and case as made, the defendant was entitled to judgment unless plaintiff amended its petition by adding a count for money had and received. Thereupon the plaintiff filed an amendment to its petition, as follows:

Plaintiff says that   *   *   *   the defendant contracted and agreed with one John Williams for the building of a school house in the town of Marshall in said district, for the use of said district, for the sum of $5,300, or thereabouts.

Plaintiff says that said building was built and said contract fulfilled by him, and said building accepted and a settlement had between said parties, and the above sum, or thereabouts, found due said Williams.

That, for a good and valuable consideration, the said Williams sold and assigned to some party, to this plaintiff unknown, a portion of the claim against said district for said services, to-wit: the sum of one thousand dollars.

That said unknown person, if so he be, sold and assigned said claim to one David Wooley, who, for a valuable and full consideration therefor, sold and assigned the same to this plaintiff.   Plaintiff says that said claim is wholly due and unpaid, and still its property, except the sum of eighty-five dollars paid thereon."

The defendant denied every material allegation contained in this amendment.

Thereupon the court, upon the facts returned by the referee, found for the plaintiff, upon the amendment to its petition, as for money had and received, the amount of its claim with six per cent. interest from May 20, 1869, less the amount for which the orders were discounted, and less a credit of $83.00, and rendered judgment against defendant for $894.50.

Both parties appeal.

*Bowman & Barger*, for plaintiff.

*H. & R. Ambler*, for defendant.

DAY, J.—The case presents for our consideration two questions: *First*, the right of plaintiff to recover upon the order sued on; *second*, plaintiff's right to recover upon the facts alleged in the amendment to the petition.

I.  From the report of the referee it appears that at the time of issuing the order in question, the value of the taxable property of defendant was $50,278.   Prior to that time defendant had issued warrants, which were outstanding, amounting to $4,094.49.   As an offset to this indebtedness, the only property which the district had was an old school house of the value of $100. At the time that the order in question was issued, the district had an outstanding indebtedness, a little in excess of eight per centum of the value of its taxable property, and no funds in the treasury.   The order in suit made this indebtedness about ten per centum of the value of its taxable property. Article II., section 3 of the Constitution, provides:   " No county, or other political or municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such county or corporation, to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness."   That this provision of the constitution applies to a school district, we held in *Winspear v. Dist. Tp. of Holman*, 37 Iowa, 542. This order, being issued in excess of the constitutional limitation, was invalid in the hands of the original holder, whose duty it was to ascertain the authority of the officers with whom he dealt, to bind the district by issuing the order in question.   *Reichard v. Warren County*, 31 Iowa, 381, and cases cited.   In this case we have nothing to do with the question of the validity of a negotiable instrument, executed by a municipal corporation in excess of this constitutional limitation, and in the hands of a *bona fide* holder.   The order sued

1. SCHOOL DISTRICT: limitation of indebtedness: constitutional law.

on, although payable to bearer and negotiable in form, does not possess the characteristics of negotiable paper. *Clark v. the City of Des Moines*, 19 Iowa, 199; *Clark v. Polk County, Ib.*, 248; *Shepherd v. District Township of Richland*, 22 Iowa, 595. The order in the hands of the plaintiff is affected by all the defects which would have attached to it in the hands of the original holder.

*2. ——: ——: order: negotiability.*

Considered as an order, there is another fatal objection to the instrument sued on. Section 26, Chapter 172, Laws Ninth General Assembly, provides that the board of directors "shall audit and allow all just claims against the district, * * * and no order shall be drawn on the district treasury until the claim for which it is drawn has been so audited and allowed." Now it appears, from the report of the referee, that no claim against the district had been audited and allowed, in discharge of which this order was drawn. Upon the contrary, it was drawn in advance of the existence of any claims against the district, for the purpose of being put upon the market and negotiated to raise money to build a school house. And it was, in fact, sold for $800.00.

The attorney for plaintiff concedes that there were such irregularities in the issuing of the paper sued on, as required the intervention of the legislature to cure. But he contends that Chapter 49, of the General Laws of the Fourteenth General Assembly, render the order legal and binding. This statute was approved April 12th, 1872, and took effect after the commencement of this suit, and is as follows: "That chapter ninety-eight of the Acts of the Twelfth General Assembly, be amended by adding to the fifth section thereof, the following: 'Provided, That when, instead of bonds as in this act is provided, any independent school district has heretofore issued orders on its treasurer, which have been sold, and the proceeds used in building school houses therein, or in paying indebtedness incurred in thus building, such orders shall be as legal and binding, as though they had been issued in bonds in accordance with this act.'" The order in question was issued May 20th, 1868. The statute authorizing independent school districts to borrow

*3. ——: ——: curative act.*

money and issue bonds, which this curative statute amends, took effect by publication April 17th, 1868, more than a month before the order in question was issued. This statute proposes only to operate upon, and apply to, orders issued before Chapter 98, Laws of Twelfth General Assembly took effect. The order in question, issued subsequently to that time, is not within its provisions. Besides, that this order was issued in violation of constitutional inhibition is a defect which this statute does not attempt to cure, and which the legislature has no power to remedy.

The court did not err in holding that plaintiff could not recover upon the instrument sued on.

II. In the amendment to the petition plaintiff alleges that John Williams, contracted to build a school house for defendant for about $5,300. That he erected the building according to contract, and assigned the sum of one thousand dollars of his claim therefor, to an unknown person, which unknown person assigned the claim to David Wooley, who sold and assigned the same to plaintiff.

No additional proof was introduced, and the case was determined upon the facts already reported by the referee. The claim then which Williams assigned, grew out of the order already referred to, and the assignment of the claim was the transfer of the order. We have already seen that this portion of Williams' claim was invalid, the transaction which gave rise to it having created a debt, after the constitutional limitation had been passed. Williams could not have enforced this debt, and his assignee occupies no better position. If Williams or plaintiff, has any right in equity to subject the building erected for the defendant to the satisfaction of the claim against the district, which we do not now determine, this adjudication is without prejudice to such right.

On defendant's appeal the cause must be

REVERSED.