SPRINGFIELD FURNITURE COMPANY *v.* SCHOOL DISTRICT No. 4
OF FAULKNER COUNTY.

Opinion delivered December 2, 1899.

1. SCHOOL DISTRICT—CONTRACT.—A contract for the purchase of school furniture made by two only of the three directors at a special meeting held without notice to the third director is invalid, as also are the warrants issued to pay therefor.   (Page 238.)

2. SAME—RATIFICATION OF INVALID CONTRACT.—Where a school district accepted and issued warrants for school furniture illegally purchased for it by two of its directors without the concurrence of the third director, and used it for more than a year, without offering to pay for its use, or to return it, and without taking any steps to annul the contract, the school district will be held to have ratified the contract, and will be denied any relief in equity.   (Page 238.)

Appeal from Faulkner Chancery Court.

THOS. B. MARTIN, Chancellor.

### STATEMENT BY THE COURT.

On the 30th day of June, 1897, the appellee filed a complaint in the Faulkner chancery court against the appellant and the county treasurer of Faulkner county, alleging that on June 23, 1896, A. K. Pearson, Gus Powers and W. M. Johhson were directors of plaintiff school district. That on said day the appellant made a pretended contract with said district through two of the directors, A. K. Pearson and Gus Powers, for the sale of school desks for $156.80, and received two school warrants in payment, signed by Pearson and Powers. That the warrants were registered with the county treasurer in January, 1897. That there was no meeting of the directors of the district at the time the contract was made and warrants issued, but that on a day shortly prior to June 23d there had been a meeting of the directors, at which meeting the proposition to buy desks had been considered, and it had been decided not to buy. That Johnson, one of the directors, did not sign the contracts or warrants, and knew nothing of either the contract or

warrants until they had been signed.   That no meeting of the three directors was held, and no notice of a meeting was given, and, in fact, there was no meeting, but Pearson and Powers acted separately.   That the desks were delivered to Pearson and Powers, who paid the freight on them, and took them to the plaintiff's schoolhouse.   That said desks are in plaintiff's possession, many of them unpacked, and all in perfect condition, and plaintiff here and now offers to return them into court for the Springfield Furniture Company.   Praying that the treasurer be enjoined from paying the warrants, and that they be declared null and void and canceled.

There was a temporary injunction issued on the day complaint was filed.   The Springfield Furniture Company answered, alleging that the purchase was authorized by a regular meeting of the directors of the plaintiff district.   That at said meeting a majority of the directors were present, and all had been legally notified of the meeting.   That plaintiff accepted said furniture, used the same, and made no offer to return same for more than one year after accepting.

The testimony shows that in June, 1896, Pearson, Powers and Johnson were the directors of the district.   That about one week before Pearson and Powers made the contract with the Furniture Company all the directors were present at a meeting when it was decided not to buy the desks.   That Johnson did not know of the subsequent meeting held by Powers and Pearson, and was not notified of the meeting, and did not hear of the contract until about a week after it had been made.   That Pearson and Powers held a meeting June 23, 1896, made and signed a contract for the purchase of forty desks, signed the warrants and received the desks at the depot during the second week in July, took them to the schoolhouse, and put up twenty six of them, and the district used them one year in the school.   After using the desks one year, they were taken down and stored in the upper part of the schoolhouse.   No offer was made to compensate the company for the use of the desks, nor was any offer made to return them, except the statement in complaint.

*J. H. Harrod*, for appellant.

Where a party seeks equitable relief, he must offer to do equity.    55 Ark. 98; 32 L. R. A. 220; 34 *id.* 548; 99 U. S. 253.

WOOD, J., (after stating the facts.)    As the contract of purchase was made by only two directors, and not at a regular meeting, nor at a special meeting upon notice to the third director, it is not binding.    *School District* v. *Bennett*, 52 Ark. 511. Likewise the warrants were also invalid.    Nevertheless, under the circumstances, the school district was not in an attitude, at the time of filing its complaint, to repudiate the contract and refuse to pay for the desks.    The proof shows that the district accepted the desks, and used twenty six of them for about one year, and did not offer to recind the contract and to return the desks until the bringing of this suit.    The director Johnson testified that he "never knew anything about a contract having been made *for about a week after it was done."*    The contract was entered upon June 23, 1896.    The suit was brought June 30, 1897.    The testimony of Johnson shows that he knew the desks had been received, and that a portion of them were being used in the schoolhouse.    It is shown, therefore, that all the directors knew of the contract, and that the desks had been received, and were being used, yet no action was had by the board to annul the contract and cancel the warrants for more than a year.    Such conduct must be taken as an acquiescence by the school district in the unauthorized contract made by two of its directors; for, all the directors having notice, the district is bound in the same manner and under the same rules as an individual would be bound.    The contract was not *ultra vires*.    Johnson, the only director not notified in the beginning, after having notice of what was done, took no steps, so far as this record discloses, to have the board rescind or repudiate the unauthorized act of the other two directors. "If a party calls upon a court of chancery to put forth its extraordinary powers, and grant him purely equitable relief, he may, with propriety, be required to submit to the operation of a rule which always applies in such cases, and do equity in order to get equity."    *Fosdick* v. *Schall*, 99 U. S. 253.

The school district can not insist upon the relief sought.

It has not even proposed to make compensation for the use of the property while in its possession. Nor did the chancellor impose any terms whatever as a condition for granting the relief prayed.

The decree is therefore reversed, and the complaint is dismissed here for want of equity.

BATTLE, J., not participating.