ARKANSAS NATIONAL BANK *v.* SCHOOL DISTRICT No. 99.

Opinion delivered March 20, 1922.

1. SCHOOL DISTRICTS—POWERS.—School districts can exercise such powers only as are expressly granted and such incidental ones as are necessary to make those powers available and effective.

2. SCHOOLS AND SCHOOL DISTRICTS—POWERS OF OFFICERS.—Persons who deal with school officers are presumed to have knowledge of the extent of their powers.

3. SCHOOL DISTRICTS—POWER TO BORROW MONEY.—School directors, in a common school district, under Crawford & Moses' Dig., § 8926, are not authorized to borrow money to build schoolhouses unless the directors shall have particularly set forth in the notices of the annual school meeting that these matters were to be submitted for their consideration and action.

4. SCHOOLS AND SCHOOL DISTRICTS—AUTHORITY TO BUILD SCHOOL-HOUSE.—The annual meeting of a school district cannot authorize the raising of money for the purchase or erection of a school building unless notice that such question would be considered is specifically given in the notice for the annual meeting as required by Crawford & Moses' Dig., § 8926.

5. SCHOOL DISTRICTS—VOID CONTRACTS—RATIFICATION.—Where a school district, without authority, undertook to borrow money to build a schoolhouse, the contract was void, and could not be ratified, either by the directors or by the voters of the district, though the money was used to construct a schoolhouse and the house was afterwards used for school purposes.

6. SCHOOL DISTRICTS—VOID CONTRACTS—EFFECT.—Where the directors of a common school district undertook, without authority, to borrow money to build a school house and signed a note for the money so borrowed, the note is void as to the district and as to persons who indorsed it for accommodation.

7. SCHOOLS AND SCHOOL DISTRICTS—USE OF BUILDING NO RATIFICATION.—Where a new school building was constructed by the directors without authority upon school lands, the use of the building after its construction for school purposes is not a ratification by the district of the unauthorized contract, and does not render the district liable for the cost of the building.

Appeal from Washington Chancery Court; *Ben F. McMahan*, Chancellor; affirmed.

STATEMENT OF FACTS.

The Arkansas National Bank brought suit in the circuit court against Common School District No. 99 and certain individuals to recover on a note alleged to be due it in the sum of $1,000 and the accrued interest.

Judgment was rendered by default in favor of the plaintiff against the defendants, and at the same term of the court, on motion of School District No. 99, the judg-

ment was set aside. The cause was then transferred to equity, where it was tried.

According to the evidence adduced in favor of the plaintiff, W. W. Coffey, and the other directors of School District No. 99, a common school district, applied to the Arkansas National Bank to borrow money for the purpose of building a schoolhouse. The bank refused to make the loan without the indorsement of certain individuals. The bank loaned the district $1,000 and took a promissory note dated June 30, 1918, and due one year after date, payable to the order of the Arkansas National Bank, with interest from date until paid at the rate of 10 per cent. per annum. The note was signed as, "District No. 99, W. W. Coffey", and it was indorsed by twelve persons.

According to the testimony of M. H. Cate, he was one of the persons who indorsed the note. W. W. Coffey, Lige Sharp and M. H. Cate were the directors at the time the note was made. W. W. Coffey signed for the district, and the others indorsed the note on the back. The money was used to build a schoolhouse in the district. The house was economically constructed. The old schoolhouse was about rotted down and was hardly fit for anything. It would have been a waste of money to repair it. The schoolhouse was worth more than the amount of money it took to build it. It was used by the district as its schoolhouse after it was constructed.

At the annual school meeting, a vote of the property owners was taken on the the question of building a new schoolhouse and of borrowing money for that purpose. Every property owner in the district but three voted to build the schoolhouse and borrow the money. The records of the quorum court showed that upon the director's report of District No. 99 a levy of 6 mills for "building tax" was made for the year 1917.

The chancellor found that the school district had no power to borrow money, and that the note given by it for money so borrowed could not be ratified, and that the note sued on was void.

The complaint of the plaintiff was dismissed for want of equity, and the plaintiff has appealed.

*B. R. Davidson,* for appellant.

The directors had power to borrow money for building a schoolhouse, especially when authorized by a vote of the entire district.

The act creating common school districts authorizes them to contract, sue and hold in their corporate name title to lands, to purchase or lease sites designated by a majority of votes, to build schoolhouses with funds provided by the district for that purpose. Kirby's Dig., 7541-2, 7614. Necessarily, by implication they would have the power to borrow money. 70 Ark. 291 holds that by implication they can employ an attorney, and 95 Ark. 26, that they have the power to purchase desks. Powers that are necessary to the exercise of granted powers are necessarily implied from those expressly granted. 95 Ark. 6; 120 Ark. 426; 140 Ark. 405.

The necessary preliminaries were complied with by submitting the question to the annual election, but, even if it had not been, the acquiescence of the public and acceptance of the building makes the contract binding. 81 Ark. 143; 82 Ark. 531; 95 Ark. 26; 67 Ark. 236; 87 Ark. 389; 98 Ark. 38; 110 Ark. 262; 111 Ark. 151; 129 Ark. 221.

A corporation is estopped, the same as an individual, where it knows its name has been signed to a bond without authority, and it remains silent without protest. 77 Ark. 355; 50 Ark. 450; 36 Ark. 663; 57 Ark. 355.

Under a contract which is absolutely void, recovery may be had when the money or benefit has been received and retained. 87 Ark. 389; 141 Fed. 944; 111 Fed. 682. The corporation cannot plead *ultra vires.* 47 Ark. 269. 48 Ark. 254; 70 Ark. 232; 74 Ark. 377; 81 Ark. 244. Especially is this true where it will accomplish a wrong. 74 Ark. 190; 89 Ark. 95; 91 Ark. 367; 96 Ark. 308; *Id.* 594; 247 Fed. 423.

The only irregularity in the transaction was possibly in the manner of signing the note, but such irregularities

will not be considered where the money has been received and spent.    36 Ark. 446; 80 Ark. 425; 105 Ark. 77.

*R. J. Wilson,* for appellee.

The note in suit was the individual obligation of the party signing it and the indorsers thereon, and not of the district.    The attempted signature of the district by W. W. Coffey "Sec." was invalid, since a common school district cannot employ a secretary from the membership of its directors and pay him a salary, 84 Ark. 516; nor is the act binding on the district because not signed by at least two of the directors as such directors.    45 Ark. 450.

The note was executed without lawful authority and was beyond the power conferred upon the directors, and was therefore null and void.    94 Ark. 583; 25 Ark. 261; 95 Ark. 26.    Contracts made by directors of common school districts, without first having been authorized by vote at the annual election, are void.    49 Ark. 94; Kirby's Dig., § 7629.

A contract void in the beginning for want of power to make it cannot be ratified.    82 Ark. 531; 94 Ark. 583; 129 Ark. 211.

Hart, J., (after stating the facts).    The decision of the chancellor was correct.    It is the settled rule in this State that school districts have and can exercise only such powers as are expressly granted and such incidental ones as are necessary to make those powers available and effective.    It is equally well settled that all persons who deal with school officers are presumed to have knowledge of the extent of their powers.    *First National Bank of Waldron* v. *Whisenhunt,* 94 Ark. 583.

Our statute does not give the directors of common school districts the power to borrow money.    The note was given for the purpose of borrowing money with which to build a schoolhouse.    It may be also stated that the bank knew that the money was to be used for that purpose, and it does not appear from the record that the directors had been given the power to construct a schoolhouse.    It is not shown that the directors gave

notice before the annual meeting that the electors would vote on the question of raising money to build a schoolhouse. It necessarily follows that the school district is not liable on the note sued on.

. The authority of common school districts to build schoolhouses is derived from secs. 8926 and 8942 of Crawford & Moses' Digest. Sec. 8926 reads as follows: "The directors shall give notice of each annual meeting by posting notices thereof, at least 15 days previous to such meeting, in three or more conspicuous places within the district; but it shall not be lawful for a district at any annual meeting to fix a site for a schoolhouse, or to raise money for building or purchasing a schoolhouse, unless the directors shall have particularly set forth in the previous notice given of such meeting that these matters were to be submitted for their consideration and action."

We have copied the section correctly, although there is a mistake in inserting it in Crawford & Moses' Digest. It will be noted that the words, "but it shall not be lawful for a district" are left out and the following words, "at any annual meeting" are changed to "at the annual meeting" and these words are added, "an estimate of the expense of the district."

This statute was construed in *Fluty* v. *School Dist.*, 49 Ark. 94, where the court held that the directors of a school district have no power to build a schoolhouse with the funds of the district unless authorized to do so by the annual school meeting, and that a contract made for such building under authority conferred at a special meeting held later is void. Judge Smith, who delivered the opinion of the court, said: "And it is not lawful, even at the annual meeting, to fix a site for the schoolhouse or to raise money for building or purchasing a schoolhouse, unless the directors shall have previously advertised that such matters will come before the meeting for its determination. The law makes no provision for called meetings, except for the single purpose of filling a vacancy in the office of director. The directors have

charge of the school affairs and educational interests in their district, and the care and custody of the school-houses, grounds and other property 'belonging to the district. But they have no power to purchase or lease in the corporate name a schoolhouse site, or to hire, purchase or build a schoolhouse with funds provided or to be provided by the district, unless thereunto authorized by a majority vote at the district meeting.''

That principle is controlling here. It will be noted that the statute makes it unlawful to raise money for building or purchasing a schoolhouse at the annual meeting unless the directors shall have particularly set forth in the notice for such meeting that this matter was to be submitted to the electors. This was not done.

In the application of the principles above announced, where the statute prescribes the only method in which a valid contract can be made, the adoption of the prescribed mode is a jurisdictional prerequisite to the exercise of the power to contract at all; and the power can be exercised in no other manner so as to incur any liability on the part of the school district. This want of power or authority can not be supplied by the unauthorized acts of the directors or by any attempted ratification afterwards. It is apparent that, if the directors had no power to make the contract in the first instance, they could not subsequently pass a resolution ratifying their act. In other words, under the record in this case, there could be no ratification by the directors, for they had no power to contract to build the schoolhouse by ratification or otherwise. It has been well said that the law never implies an obligation to do that which it forbids the party to agree to do.

Again, it is urged that there has been a ratification by the electors of the school district acquiescing in the action of the directors and using the schoolhouse after it was built. In the first place, it may be said that the land on which the schoolhouse was built belonged to the school district, and the use of the schoolhouse was inseparable from the enjoyment of the land.

Again, it may be said that, if the taxpayers of the district could be made liable by the fact that the money was used in building a schoolhouse, the statutory prohibition, making it unlawful for a district to raise money for building a schoolhouse unless due notice had been previously given in the manner prescribed by the statute, would be useless. The limitation or restriction imposed by the statute would be practically of no avail, if it could be brought to naught by the unauthorized act of the directors acquiesced in by the electors of the district. The public by such a doctrine would be exposed to the very abuse which the Legislature intended to prevent. The statute in question was passed as an act of public policy by the Legislature, and it would be a very unsafe rule to establish to hold that school officers might borrow money without complying with the statute and bind the district because it was used in constructing a schoolhouse and the house was used afterwards for school purposes.

As we have already seen, any one who deals with a school district, the mode of whose power to contract is restricted by statute, must see to it that the contract on which he relies is entered into in the manner prescribed by the statute. The district being without power to construct the schoolhouse so far as the record discloses, there could be no ratification of an act done in violation of the statute, and such act was a nullity, so far as the liability of the district was concerned. *Goose River Bank* v. *Willow Lake School Township* (N. D.) 26 Am. St. 605; *Young* v. *Board of Education* (Minn.) 40 Am. St. 340; *McDonald* v. *Mayor* (N. Y.) 23 Am. Repts. 144; *Newbery* v. *Fox* (Minn.) 5 Am. St. 830, and *Turney* v. *Bridgeport* (Conn.) 12 Atl. 520.

In the last mentioned case the facts were that the plaintiff had contracted with the committee of a town to erect a schoolhouse, excepting certain parts, for an agreed price, and the town took possession and used the schoolhouse after it was finished. It was held that the taking possession and use by the town of the school-

house erected on its land was not such a ratification of unauthorized expenditures in the erection of the building as would make the town liable therefor.

It follows that the decree must be affirmed.